**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MARIA VIZZACCARO,                    CASE NO.

    Plaintiff,                    HON.

vs.

BOB'S DISCOUNT FURNITURE, LLC, a
foreign limited liability company,

    Defendant.

JEFFREY S. BURG (P38381)
Law Offices Jeffrey S. Burg, Esq.
Attorney for Plaintiff
16291 W. 14 Mile Road, Ste. 24
Beverly Hills, MI   48025
(248) 227-5027 (T)
(248) 856-1258 (F)
Jburg@comcast.net

# COMPLAINT AND DEMAND FOR JURY

Now comes Plaintiff, MARIA VIZZACCARO, by her attorney, Law Offices Jeffrey S. Burg, Esq., and for her complaint against Defendant states as follows:

**Jurisdiction and Parties**

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq and 42 USC 2000e(5)(E)(3) (Title VII), under 42 USC §1981, and under the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. (ELCRA).
2. This court has jurisdiction over Plaintiff's federal claims pursuant to 42 USC 2000e-5, 28 USC 2201 and 2202, and 28 USC 1331, 1343(4).
3. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's claim for violation of the Michigan ELCRA.
4. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 USC 1391(b), wherein Plaintiff resides, Defendant regularly conducts business and where the actionable wrongful conduct occurred.
5. Plaintiff is a resident of and is domiciled in the State of Michigan.
6. Defendant is a foreign corporation doing regular and systematic business in the Eastern District of Michigan.

**Background Facts**

7. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.
8. Plaintiff is female and is Caucasian.
9. Before coming to Defendant's employ, Plaintiff was a top-selling salesperson for another nationwide company, and came to Defendant as a seasoned sales professional.

10. Defendant hired Plaintiff in April, 2019, in the position of salesperson.

11. During orientation and training with Defendant, Plaintiff told management personnel and fellow trainees that she was in a long-term interracial relationship with an African-American man.

12. The management personnel Plaintiff was assigned to report to were white.

13. Plaintiff performed her duties in exemplary fashion at all times and was at all times either the top or one of the top-performing salespeople on Defendant's staff.

14. After informing management personnel and colleagues that she was in an interracial relationship, Plaintiff began to be subjected to a continuous hostile work environment based on race and/or association with race, including but not limited to the following acts and events:

    a. Continuous comments by co-employees, often in the presence of and with the tacit or explicit approval of management, with both direct and indirect racial content, including but not limited to:

        i. that Plaintiff "only likes dark meat;"
        ii. that Plaintiff "belongs in Detroit, not Shelby Township;"
        iii. that Plaintiff "hangs out on the wrong side of the tracks;"
        iv. that Plaintiff "likes big black c**ks;"
        v. that Plaintiff "only likes rap music;"
        vi. that Plaintiff "associates with criminals;"
        vii. that Plaintiff "does not fit in with [Defendant's] culture."

b. A white manager informed Plaintiff that "Kevin," a white co-employee of Plaintiff's, "does not like that you're 'with' a black man." Plaintiff had complained to this and other managers that:

   i. "Kevin" several times stole Plaintiff's business cards, preventing her from handing them to customers;

   ii. "Kevin" stole and hid Plaintiff's tablet several times, intentionally subjecting Plaintiff to criticism and then formal discipline for allegedly not having and utilizing her tablet according to company policy;

   iii. "Kevin" numerous times made racist and threatening comments to Plaintiff, often whispering them in Plaintiff's ear after sneaking up on Plaintiff from behind and using profanity;

   iv. Plaintiff was told that "Kevin" was intentionally "screwing up [Plaintif's] sales numbers;"

   v. "Kevin" would follow Plaintiff around and say "go home!" and other harassing phrases;

   vi. Plaintiff was told by a manager that "as long as [Plaintiff] had allegations against Kevin that [Plaintiff ] had to leave as Kevin was working;"

   vii. Plaintiff asked to rearrange her schedule to minimize her days working with "Kevin," but her request was denied by management.

c. Plaintiff observed black co-employees being treated badly and in disparate fashion, including but not limited to:

      i. Plaintiff observed an African-American female office worker who had openly complained of discrimination and harassment twice having to walk off the job because of what she perceived as a hostile work environment;

      ii. Plaintiff observed another African-American female who was recently hired into sales but was suddenly absent; when Plaintiff asked her white manager why she was absent, he responded that he had encouraged her to quit as it was "not the place for her and she did not have a promising future there."

      iii. Plaintiff trained with another African-American female salesperson and gave great performance reviews of her to management; yet, she was terminated by the white manager before she started formal training and he stated to Plaintiff that she "did not fit in with the culture."

      iv. On the day prior to Opening Day Plaintiff was at a meeting where an African American male introduced himself as the new stock person. He was never put on the schedule and never worked a day at Defendant's store. A white co-employee's son replaced him.

      v. All white sales trainees continued to be supported and maintained in their employment while the African-American trainees were one-by-one being separated from the company.

d. Plaintiff more than once would arrive at work to find that someone had rigged Plaintiff's "SkyUp" entries in a manner calculated to diminish Plaintiff's sales-to-customer-ticket $$ ratio. Plaintiff complained each time to a manager but nothing was done to stop the intentional sabotage of Plaintiff's performance.

5

15. In addition to being harassed and made the object of a hostile work environment based on Plaintiff's association with an African-American person, the above acts also were conducted against Plaintiff and a hostile work environment created against Plaintiff because Plaintiff was female.

16. Plaintiff observed that the obnoxious and harassing behaviors conducted against Plaintiff were also conducted against other females; this conduct included one manager telling "dumb blonde jokes" to Plaintiff, who is blonde, and to another blonde-haired female colleague of Plaintiff.

17. A male manager also told Plaintiff, "Someone better support your ass because you won't be working here much longer;" and "Don't make me tell these people they can't pick up or I will fucking fire you right here on the spot;" and "You don't belong here;" and "Try and find other work that you may be better at." Plaintiff did not observe this manager or other managers ever speaking to male employees in this hostile and abusive manner.

18. Plaintiff repeatedly complained to management about both the racial hostile work environment and the gender-based hostile work environment, but more than one management agent refused to process any internal complaints or to take action to stop the hostile work environment.

19. Plaintiff's fiancé, an African-American man, came into the store on Friday, July 19, 2020, visiting with Plaintiff on her break time. He spent a half hour in the store with Plaintiff, and they looked at furniture. Plaintiff introduced him to every co-employee that was present and to several of the management agents present.

20. The day following Plaintiff's fiancé's visit, Plaintiff received her schedule for the following week. This schedule deviated from all previous schedules, because it deprived

Plaintiff of lucrative night shifts, which were mandatory, and gave Plaintiff all day shifts. Plaintiff went to the scheduling manager and complained, but was refused any changes.

21. Plaintiff then went to other employees, who were happy to switch shifts with Plaintiff. When the same manager heard about the switches, she refused to make them, even though it was company policy to adhere to them if employees had agreed on the changes.

22.  Plaintiff then complained to the same manager that there was severe discrimination and harassment going on against Plaintiff, and that Plaintiff wished to transfer to another store. This manager told Plaintiff she would confer with other management.

23.  One-half hour later, still on the day after Plaintiff's African-American fiancé had come to the store, Plaintiff was called into the office with all four managers present, and when Plaintiff asked why she had been called in, one manager responded angrily and with profanity and yelled that Plaintiff "was not to speak, and this is a MONOLOGUE not a DIALOGUE," that Plaintiff had "terminable offenses," that Plaintiff  "did not fit into Bob's culture," and that he predicted Plaintiff "would not last the day" in Defendant's employ.

24.  Plaintiff returned to the sales floor shaken by the meeting and what she had been told.

25. After serving a couple and selling them two recliners,  Plaintiff called a manager over on an issue, and he proceeded to explode in front of the customers, saying, "if you fucking don't handle this, you are so fired! and don't make me explain to them why they can't pick up here!"

26.   This manager, "Jim," continued screaming at Plaintiff, called co-employee "Sharon" over to witness the scene, and said  to Plaintiff, "you are so fucking fired.  How dare you upset the customers.  Get out of my fucking store and I better never see your fucking face

7

again." "Jim" then called another co-worker of Plaintiff's to follow Plaintiff to her locker to clean it out and escort Plaintiff out the door.

27. Plaintiff was thus discharged from Defendant's employ on July 20, 2019.

### COUNT I :  VIOLATION OF TITLE VII- RACE DISCRIMINATION BY ASSOCIATION

28. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.

29. To the extent the adverse employment actions identified above were motivated by Plaintiff's association with a person of a protected race, Defendant has engaged in unlawful employment discrimination in violation of Title VII, including in the establishment and maintenance of a hostile work environment based on race by association and in the termination of Plaintiff's employment.

30. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

### COUNT II: VIOLATION OF ELCRA – RACE DISCRIMINATION BY ASSOCIATION

31. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.

32. To the extent the adverse employment actions identified above were motivated by Plaintiff's association with a person of a protected race, Defendant has engaged in unlawful employment discrimination in violation of Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., including in the establishment and maintenance of a hostile work environment based on race by association and in the termination of Plaintiff's employment.

33. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT III: VIOLATION OF ELCRA – GENDER- HOSTILE ENVIRONMENT

34. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.

35. To the extent the adverse employment actions identified above were motivated by Plaintiff's gender and in the course of creating and maintaining a hostile work environment and terminating Plaintiff's employment, Defendant has engaged in unlawful employment discrimination in violation of Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

36. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT IV: VIOLATION OF ELCRA – RETALIATION

37. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.

38. To the extent the adverse employment actions identified above were motivated by Plaintiff's protected activities of complaining numerous times about discrimination and about a discriminatory hostile work environment, based on both gender and race-association, Defendant has engaged in unlawful employment discrimination in violation of Elliott-Larsen Civil Rights Act, MCL 37.2701.

39. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

### COUNT V: VIOLATION OF 42 U.S.C. §1981

40. Plaintiff repeats and realleges the preceding paragraphs as though fully stated herein.

41. Defendant's discrimination against Plaintiff was in violation of the rights of Plaintiff as afforded her by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

42. By the conduct described above, Defendant intentionally deprived the Plaintiff the same rights as are enjoyed by white citizens who associate with white persons, to the creation, performance, enjoyment, and all benefits and privileges, of her contractual employment relationship with Defendant, in violation of 42 U.S.C. §1981.

43. As a result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling her to compensatory damages.

44. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

45. To remedy the violations of the rights of Plaintiff as secured by Section 1981, Plaintiff requests that the Court award her the relief prayed for below.

## Damages

PLAINTIFF REQUESTS that this court enter judgment against Defendant on all counts as follows:

1. Legal relief

    a. a judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

    b. compensatory damages in whatever amount she is found to be entitled;

    c. punitive and exemplary damages commensurate with the wrongs done and Defendant's ability to pay;

    d. liquidated damages;

    e. an award of interest, costs, and reasonable attorney fees.

2. Equitable relief

    a. an order reinstating Plaintiff to the position she would have held if there had been no discrimination and retaliation by Defendant;

    b. an injunction prohibiting any further acts of retaliation or discrimination;

    c. an award of interest, costs, and reasonable attorney fees;

    d. whatever other equitable relief appears appropriate at the time of trial.

                    Respectfully submitted,
                    Law Offices Jeffrey S. Burg, Esq.

                    /s/ Jeffrey S. Burg
                    _____

Dated: November 5, 2020          Jeffrey S. Burg (P38381)
                                                Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        Law Offices Jeffrey S. Burg, Esq.

                                        /s/ Jeffrey S. Burg
                                        _____

Dated: November 5, 2020            Jeffrey S. Burg (P38381)
                                        Attorney for Plaintiff