UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARIA VIZZACCARO,

          Plaintiff,                  CASE NO. 2:20-cv-12985

vs.                                 HON. SHALINA D. KUMAR

BOB'S DISCOUNT FURNITURE,      MAGISTRATE JUDGE
LLC, a foreign limited liability        KIMBERLY G. ALTMAN
company,

          Defendant.

---

| | |
|---|---|
| LAW OFFICES JEFFREY S. BURG, ESQ. | JACKSON LEWIS P.C. |
| Jeffrey S. Burg (P38381) | Marlo Johnson Roebuck (P65640) |
| Attorneys for Plaintiff | Linda L. Ryan (P67686) |
| 16291 W. 14 Mile Road, Suite 24 | Attorneys for Defendant |
| Beverly Hills, MI 48025 | 2000 Town Center, Suite 1650 |
| (248) 227-5027 | Southfield, MI 48075 |
| jburg@comcast.net | (248) 936-1900 |
| | marlo.roebuck@jacksonlewis.com |
| | linda.ryan@jacksonlewis.com |

---

## DEFENDANT BOB'S DISCOUNT FURNITURE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendant Bob's Discount Furniture ("Defendant" or "Bob's"), through its undersigned counsel, moves for an order enforcing the settlement agreement entered into by the parties and dismissing Plaintiff's claims against it with prejudice. In support of its Motion, Bob's relies upon the attached Brief in Support of its Motion to Enforce Settlement Agreement and upon the pleadings on file with

this Court. In addition, given the confidential nature of the settlement agreement, Defendant has filed a Motion to Seal the exhibits to its Motion to Enforce Settlement Agreement, as the exhibits contain confidential details of the parties' settlement agreement as well as the parties' settlement agreement itself.

Counsel for Defendant sought concurrence in the relief requested from Plaintiff on  April 22, 2022 in email correspondence in which the relief sought and the basis for same was explained; however, such concurrence was not forthcoming.

WHEREFORE, Defendant Bob's Discount Furniture respectfully requests that the Court grant its Motion to Enforce Settlement Agreement in its entirety, dismiss Plaintiff's claims with prejudice and award Defendant its costs and fees incurred in being forced to file this Motion.

> Respectfully submitted,
> JACKSON LEWIS P.C.
>
> BY:   /s/ Linda L. Ryan
>       Marlo J. Roebuck (P65640)
>       Linda L. Ryan (P67686)
>       Attorneys for Defendant
>       2000 Town Center, Suite 1650
>       Southfield, MI  48075
>       (248) 936-1900
>       marlo.roebuck@jacksonlewis.com

Dated:  April 28, 2022       linda.ryan@jacksonlewis.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARIA VIZZACCARO,

      Plaintiff,                       CASE NO. 2:20-cv-12985

vs.                                HON. SHALINA D. KUMAR

BOB'S DISCOUNT FURNITURE,      MAGISTRATE JUDGE
LLC, a foreign limited liability        KIMBERLY G. ALTMAN
company,

      Defendant.

---

| LAW OFFICES JEFFREY S. BURG, ESQ. | JACKSON LEWIS P.C. |
|---|---|
| Jeffrey S. Burg (P38381) | Marlo Johnson Roebuck (P65640) |
| Attorneys for Plaintiff | Linda L. Ryan (P67686) |
| 16291 W. 14 Mile Road, Suite 24 | Attorneys for Defendant |
| Beverly Hills, MI  48025 | 2000 Town Center, Suite 1650 |
| (248) 227-5027 | Southfield, MI  48075 |
| jburg@comcast.net | (248) 936-1900 |
| | marlo.roebuck@jacksonlewis.com |
| | linda.ryan@jacksonlewis.com |

---

**BRIEF IN SUPPORT OF DEFENDANT BOB'S DISCOUNT FURNITURE'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    STATEMENT OF RELEVANT FACTS..................................................... 2

       A.    The Parties Agreed To Engage In Settlement Discussions,
             Which Culminated In A Binding Settlement Agreement ................. 2

       B.    The Parties' Exchanged Settlement Agreement, Terms of
             Which Were Accepted by Plaintiff's Counsel ................................... 3

       C.    After Agreeing to Terms, Plaintiff's Counsel Requests
             Additional, Non-Material Changes to the Agreement ....................... 4

III.   LEGAL ARGUMENT........................................................................ 6

       A.    Standard of Review .......................................................................... 6

       B.    The Parties, Through Their Attorneys Entered Into An
             Enforceable Settlement Agreement...................................................... 7

             1.    The Record Reflects Extensive Negotiations, Which
                   Culminated In A Written Offer And Acceptance ................... 7

             2.    Plaintiff's Unilateral Repudiation of the Agreement is
                   Ineffective ................................................................................ 9

             3.    Plaintiff's Attorney, As Plaintiff's Agent, Accepted The
                   Offer, And Therefore Entered Into A Binding And
                   Enforceable Settlement Agreement ...................................... 11

       C.    Plaintiff Cannot Establish Fraud, Mutual Mistake Or Duress,
             And Thus Is Bound By The Final And Binding Settlement
             Agreement ........................................................................................ 14

IV.    CONCLUSION.............................................................................. 16

i

## STATEMENT OF ISSUE PRESENTED

1. Should this Court grant Defendant Bob's Discount Furniture's Motion to Enforce Settlement Agreement where the parties' objective actions establish that a binding settlement agreement was reached on all material terms, Plaintiff's attorney had apparent authority to enter into that agreement, and Plaintiff's subsequent change of her mind is insufficient as a matter of law to negate the existence of an otherwise enforceable contract?

Defendant says: "Yes"

# INDEX OF CONTROLLING AUTHORITY

**Page(s)**

**Cases**

*Aro Corp. v. Allied Witan Co.*,
    531 F.2d 1368 (6th Cir. 1976) ............................................................... 6

*Bamerilease Capital Corp. v. Nearburg*,
    958 F.2d 150 (6th Cir.1992) ........................................................... 5, 6

*Bostick Foundry Co. v. Lindberg*,
    797 F.2d 280 (6th Cir. 1986) ................................................................ 5

*Brock v. Scheuner Corp.*,
    841 F.2d 151 (6th Cir.1988) ................................................................ 5

*Clark v Al-Amin*,
    309 Mich App. 387 ............................................................................ 13

*Glenn v. Yarbrough*,
    2015 Mich. App. LEXIS 1445 ............................................................ 12

*Grosberg v. Michigan National Bank-Oakland*,
    420 Mich. 707, 362 N.W.2d 715 (1984) ............................................ 10

*Groulx v. Carlson*,
    176 Mich. App. 484, 440 N.W.2d 644 (1989) .................................... 13

*Hashem v. Les Stanford Oldsmobile, Inc.*,
    266 Mich. App. 61, 697 NW2d 558 (2005) ......................................... 6

*Henley v. Cuyahoga County Bd. of Mental Retardation &*
    *Developmental Disabilities*,
    141 Fed.Appx. 437 (6th Cir. 2007) ...................................................... 6

*Kloian v Domino's Pizza*,
    LLC, 273 Mich. App. 449 ..................................................................... 6

*Kukla v. National Distillers Products Co.*,
    483 F.2d 619 (6th Cir.1973) ................................................................ 5

*Mich. Reg'l Council of Carpenters v. New Century Bancorp, Inc.*,
99 Fed. Appx. 15 (6th Cir. 2004)............................................................9

*Michigan National Bank of Detroit v. Kellam*,
107 Mich. App. 669, 309 N.W.2d 700 (1981).....................................10

*Nelson v. Consumers Power Co.*,
198 Mich. App 82 ........................................................................11, 12

*Rahaman v. Ameriprise Ins. Co.*,
2020 Mich. App. LEXIS 7894....................................................10, 11

*Reed v. Citizens Ins. Co. of Amer.*,
198 Mich. App. 443, 499 N.W.2d 22 (1993) (overruled on other
grounds in *Griffith v. State Farm Mut. Auto. Ins. Co*., 472 Mich.
521, 540, 697 N.W.2d 895 (2005))........................................................9

*Streeter v Mich Consol Gas Co*,
340 Mich. 510, 65 N.W.2d 760 (1954)...............................................13

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
217 F.3d 414 (6th Cir. 2000) ................................................................5

*Thomas v. Mich. Mut. Ins. Co.*,
358 NW2d 902 (Mich. App. 1984).......................................................8

*Williams v. L.C.P. Chem. Inc*.,
802 F.2d 461, 1986 U.S. App. LEXIS 28880, 1986 WL 17528 (6th
Cir. 1986) .........................................................................................6, 7

**Statutes**

42 U.S.C. §1981 ......................................................................................1

Title VII and Michigan's Elliott-Larsen Civil Rights Act.........................1

**Other Authorities**

Restatement of Agency ...........................................................................9

# I.    <u>INTRODUCTION</u>

Plaintiff, Maria Vizzaccaro, an unsuccessful probationary Sales Associate at Bob's Discount Furniture's ("Bob's") Shelby Township, Michigan location, who was terminated within her first 90 days of employment, filed a five-count Complaint against Bob's. In her Complaint, Plaintiff alleges discrimination on the basis of race by association in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act (Counts I, II); "Gender-Hostile Environment" in violation of ELCRA (Count III); Retaliation in violation of ELCA (Count IV); and violation of 42 U.S.C. §1981 (Count V). Throughout this litigation, Plaintiff has been represented by attorney Jeffrey Burg, who has also appeared on her behalf before this Court on several occasions in his capacity as Plaintiff's attorney.

Following the conclusion of discovery, the parties engaged in settlement discussions which culminated in an agreement on February 17, 2022. Despite achieving a binding settlement, Plaintiff has refused to sign the written settlement agreement memorializing the terms of the settlement.  Because Plaintiff may not avoid a settlement to which she is bound, and which her attorney as her agent reached on her behalf, Bob's moves to compel enforcement of the settlement agreement in this matter, and for the dismissal of the Complaint in its entirety.

Wherefore, Bob's Discount Furniture respectfully requests that this grant its Motion to Enforce Settlement Agreement and dismiss Plaintiff's claims, with

prejudice, and award Bob's Discount Furniture its costs and fees incurred in bringing this Motion before the Court, and such other relief as this Court deems just and appropriate.

## II.      STATEMENT OF RELEVANT FACTS

### A.      The Parties Agreed To Engage In Settlement Discussions, Which Culminated In A Binding Settlement Agreement

On February 17, 2022, counsel for Bob's and Jeffrey Burg, counsel for Plaintiff, engaged in settlement discussions that lasted into the evening. Mr. Burg conveyed his client's final offer on that date, which was accepted by Bob's. The acceptance and confirmation of the settlement was memorialized in an email from Bob's counsel at 6:40 PM. (Ex. 1, 02/17/2022 email.)[1]  At no time did Plaintiff's counsel object to the contents of the email or otherwise express that the email did not accurately represent the parties' agreement. Furthermore, as Mr. Burg has been Plaintiff's attorney of record since the matter was filed on November 5, 2020, defense counsel had no reason to doubt Mr. Burg's authority to settle.

---

[1] Currently pending before this Court is Bob's Motion to File Exhibits to Motion to Enforce Settlement Agreement Under Seal, which include Exhibits 1,2,3,4,5 and 9 in accordance with L. R. Civ. P. 5.3(b). (ECF No. 23.) Accordingly, redacted exhibits in support of Bob's Motion to Enforce Settlement Agreement are being filed publicly and unredacted exhibits are being filed under seal with this motion until this Court has an opportunity to review and rule on this Motion

**B.**     **The Parties' Exchanged Written Settlement Agreement, Terms of Which Were Accepted by Plaintiff's Counsel**

Having reached agreement as to the material terms, counsel for Bob's prepared a draft settlement agreement, which was conveyed to Mr. Burg for his review on February 22, 2022. (Ex. 2, 02/22/2022 Email.) Mr. Burg contacted Bob's counsel later that day and requested minor revisions in the settlement agreement. These changes included Plaintiff's last day of work; an affirmation that Plaintiff had made no additional claims against Bob's other than those in her Complaint; timing for payment of settlement proceeds; and identification of Plaintiff's fiancé as an individual with whom she may discuss the terms of the agreement. In an email dated February 23, 2022, counsel for Bob's proposed language to address these concerns. (Ex. 3, 02/23/2022 Email.) Mr. Burg responded that this language was acceptable, instructed counsel to incorporate them, and thanked counsel for doing so. (*Id.*) Thereafter, on February 24, 2022, Counsel for Bob's contacted the Court's case manager to inform the Court that the parties had reached a confidential agreement; therefore, Bob's would not be filing a dispositive motion.

On February 25, 2022, Mr. Burg provided the name of Plaintiff's fiancé for the confidential disclosure term of the written settlement agreement, as well as the allocation of the settlement proceeds. (Ex. 4, 02/25/2022 Email.) These items were incorporated into the settlement agreement and release and on February 28, 2022

the finalized document was sent to Mr. Burg to secure Plaintiff's signature. (Ex. 5, 02/28/2022 Email.) The next day, counsel for Bob's sent Mr. Burg a proposed stipulated order of dismissal for his review, consistent with the terms of the settlement agreement. (Ex. 6, 03/01/2022). On March 4, 2022, Bob's counsel emailed Mr. Burg regarding the status of obtaining Plaintiff's signature on the settlement agreement. (Ex. 7, 03/04/2022, 03/08/2022 Emails.) Mr. Burg responded by telephone call in which he indicated he would be speaking with his client. (Ex. 7, 03/08/2022 Email in Response to J. Burg voicemail.) Again, at no time, did Mr. Burg state or otherwise indicate that he lacked authority to settle the matter, or express his belief that the matter had not been settled.

## C. After Agreeing to Terms, Plaintiff's Counsel Requests Additional, Non-Material Changes to the Agreement

On March 8, 2022 Mr. Burg contacted counsel for Bob's, leaving a message that he had a question regarding the release language. (Ex. 8, 03/08/2022 voicemail.)  When the parties' counsel next spoke, Mr. Burg requested a minor modification of allocation of settlement funds to the release of age-discrimination claims and counsel for Bob's invited him to propose language. As Plaintiff did not plead an age discrimination claim in this lawsuit, Mr. Burg's questioning of that language in the release was not material to the settlement that had been reached. Notably absent was any indication that the parties had not reached a settlement.

4

When Mr. Burg did not propose alternative language, Bob's counsel did so on March 16, 2022. (Ex. 9, 03/16/2022 Email.)

On March 17, 2022, a month after the parties had reached agreement, Plaintiff's counsel contacted counsel for Bob's, leaving a voicemail in which he stated:

> Hey, Linda it's Jeff Burg. It's 10:25. It's Thursday the 17th. I'm actually not working today and I'm not well, but I wanted to call you back because you're trying to reach me. Rightly so. Hmm, I am sorry to say, Linda that my client—I lost control of my client. Actually, she's not going to hmm this release. It's not because of the language of the release. Hmmm. It's because she's unhappy with the amount being offered and uh that is, I'm sorry about that. I realize that is hmm a failure in the process considering she didn't give me authority at that level and I made a deal with you, so am I'll be in tomorrow, likely, umm, if you want to call hmmm and talk to me about it call in the late morning [cellular number redacted]. Thank you, bye.

(Ex. 10, 03/17/2022 Voicemail from J. Burg.)[2]   In sum, Mr. Burg represented that Plaintiff was reneging on the settlement because she wanted a higher settlement amount than to which her counsel admittedly agreed to on her behalf, and on this basis, was refusing to sign the settlement agreement. Thus, after settling this matter on February 17, 2022 and agreeing on all material terms and conditions on February 23, 2022, it is now Plaintiff's position that she should not be held to the settlement terms because her lawyer lacked authority to settle the matter.

---

[2] Transcripts of both the 03/08/2022 and 03/17/2022 voicemails are attached as Exhibit 11.

Accordingly, Bob's now files the instant motion seeking an order from this Court to enforce the parties' binding settlement.

### III. LEGAL ARGUMENT

**A.    Standard of Review**

The District Court has the equitable power to enforce a settlement agreement when there is no dispute or ambiguity as to either the entry into, or the terms of, the agreement. *Brock v. Scheuner Corp*., 841 F.2d 151, 154 (6th Cir.1988); *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir.1973). Thus, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock*, 841 F.2d at 154. *See also Therma-Scan, Inc. v. Thermoscan, Inc*., 217 F.3d 414, 419-420 (6th Cir. 2000). "Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined." *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 283 (6th Cir. 1986).

"Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992). Therefore, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." (*Id.*)

6

**B.    The Parties, Through Their Attorneys Entered Into An Enforceable Settlement Agreement.**

Under Michigan law, a contract requires an offer, mutual assent on essential terms, and an acceptance. *Kloian v. Domino's Pizza*, LLC, 273 Mich. App. 449, 452; 773 NW2d 766 (2006)(internal quotes omitted). Here, Plaintiff's counsel made an offer and Bob's accepted it on February 17, 2022. The essential terms were thereafter incorporated into a written document to which Plaintiff's counsel agreed on February 23, 2022 "was acceptable." (Ex. 4.) Thus, all three elements are met, and this Court should conclude that an enforceable settlement agreement exists.

**1.    The Record Reflects Extensive Negotiations, Which Culminated In A Written Offer And Acceptance**

As evidenced by the facts set forth above, the parties negotiated a series of offers and counteroffers, which ultimately culminated in Bob's acceptance of Plaintiff's offer to privately resolve this dispute. (*See* Exs. 1-9) That accepted offer was reduced to a writing that was circulated between the parties. (*Id*.) Indeed, the timeline of events was as follows:

- February 17, 2022: After extensive verbal negotiations, the parties reached an agreement at 6:40 PM, which was memorialized in email correspondence. (Ex. 1)

- February 22, 2022: A draft settlement agreement and release was prepared and provided to Plaintiff's attorney. (Ex. 2.)

- February 22, 2022: the parties' counsel discussed redrafting of specific terms, including identification of individuals with whom

Plaintiff could discuss the confidential agreement, her last day worked, and timing of payment of settlement proceeds. (Ex. 2.)

- February 23, 2022: counsel for Bob's proposed language to address those terms in an email to Plaintiff's counsel. (Ex. 3.)

- February 23, 2022: Plaintiff's counsel accepted those changes and asked that they be incorporated into the agreement. (Ex. 3.)

- February 24, 2022: Bob's counsel contacted the Court's case manager to inform the Court that the parties had reached a confidential resolution of the matter.

- February 25, 2022: Plaintiff's counsel provided the name of Plaintiff's fiancé for incorporation into the agreement and a proposed division of the settlement proceeds between wages, attorneys' fees, and non-economic damages. (Ex. 4.)

- February 28, 2022: Counsel for Bob's accepted Plaintiff's proposed division of the settlement proceeds (Ex. 5.)

- March 1, 2022: Counsel for Bob's emailed Plaintiff's counsel a proposed stipulated Order of Dismissal for review (Ex. 6.)

- March 4, 2022: Counsel for Bob's requested an update regarding obtaining an executed agreement. (Ex. 7.)

- March 8, 2022: Plaintiff's counsel contacted counsel for Bob's regarding allocation of funds related to age-discrimination claims. Although this language had been in all iterations of the agreement, no issue had been raised with respect to it until March 8, 2022. (Ex. 8.)

- March 16, 2022: Counsel for Bob's removed the allocation in complete acquiescence to Plaintiff's counsel's late change request and forwarded the agreement to Plaintiff's counsel for signature. (Ex. 9.)

Thus, since February 23, 2022, when Plaintiff's counsel accepted the language of the written settlement and release agreement, there can be no question that the parties had reached a valid and enforceable settlement agreement.

That an agreement had been reached and a meeting of the minds was achieved is judged "by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind," is further manifested by the subsequent conduct of all involved. *Klorian*, supra at 454 (internal quotations omitted). Specifically: Bob's counsel preparing the settlement agreement and providing it to Plaintiff's counsel for review; Plaintiff's attorney requesting changes to the same; Plaintiff's attorney providing the division of settlement proceeds to W-2, non-economic, and attorneys' fees; Plaintiff's attorney providing Plaintiff's fiancé's name for inclusion as an individual to whom Plaintiff may discuss the agreement; defense counsel incorporation of those changes; Plaintiff's counsel then conveying his acceptance of the parties' binding settlement agreement to Bob's counsel; and counsel for Bob's communication to the Court that they had reached a confidential resolution of the matter, thus would not be filing dispositive motions, all lead "to the conclusion that an acceptance did occur" and that the parties understood that a binding and enforceable settlement agreement had been reached. *Thomas v. Mich. Mut. Ins. Co.*, 358 NW2d 902 (Mich. App. 1984).

### 2.    Plaintiff's Attempted Subsequent Unilateral Repudiation of the Agreement is Ineffective

On March 17, 2022 Plaintiff's counsel, for the first time since terms were initially agreed upon on February 17, 2022, and material terms finalized on

February 25, 2022, indicated that Plaintiff was unhappy with the settlement amount and would not sign the settlement agreement. (Ex. 10.) Yet, Plaintiff's unilateral change of heart based on her belief that she was entitled to a higher settlement amount is of no legal consequence where the parties have previously agreed upon those terms and resolved the matter. Indeed, precedent is clear that a unilateral change of mind does not destroy the parties' agreement. *See Reed v. Citizens Ins. Co. of Amer.*, 198 Mich. App. 443, 447, 499 N.W.2d 22, 24 (1993) (holding that a unilateral change of mind is not an adequate ground to excuse performance of a contract to settle legal claims) (overruled on other grounds in *Griffith v. State Farm Mut. Auto. Ins. Co.*, 472 Mich. 521, 540, 697 N.W.2d 895 (2005)) (citing *Thomas v. Mich. Mut. Ins. Co.,* 138 Mich. App. 117, 118, 358 N.W.2d 902 (1984) ("Settlement agreements should not normally be set aside and ... once a settlement agreement is reached a party cannot disavow it merely because it has had a 'change of heart.'")). Additionally, "[a] valid settlement agreement need not be premised on a writing at all, let alone a writing signed by all of the parties." *Mich. Reg'l Council of Carpenters v. New Century Bancorp, Inc.*, 99 Fed. Appx. 15, 21-23 (6th Cir. 2004) (enforcing a settlement agreement where all parties did not sign the settlement agreement, but all parties, by expressions of assent, agreed to the material terms of the settlement agreement).

10

3.   **Plaintiff's Attorney, As Plaintiff's Agent, Had Apparent Authority To Enter Into A Binding And Enforceable Settlement Agreement On Plaintiff's Behalf**

The enforceability of the settlement agreement is not eroded by Plaintiff's claim that her attorney lacked authority because Plaintiff's attorney had apparent authority to enter into a binding settlement agreement, which he did, by his own admission. The Restatement of Agency defines apparent authority as:

> apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons. Restatement (Second) of Agency § 8. Michigan courts accept this definition of apparent authority.

*See Grosberg v. Michigan National Bank-Oakland*, 420 Mich. 707, 362 N.W.2d 715 (1984). If a third party, based on a principal's manifestations, reasonably believes that the supposed agent is authorized to enter into a transaction or agreement, the principal will not be allowed to deny liability under the agreement even if the agent had no actual authority to act for the principal. Apparent authority is created by the principal's manifestations to the third party; the principal's communications with the supposed agent are not relevant to the question of apparent authority. *Michigan National Bank of Detroit v. Kellam*, 107 Mich. App. 669, 309 N.W.2d 700 (1981).

When a client hires an attorney and holds him out as counsel representing her in a matter, the client clothes the attorney with apparent authority to settle

11

claims connected with the matter. "Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority." *Rahaman v. Ameriprise Ins. Co.*, 2020 Mich. App. LEXIS 7894 at *4, quoting *Fletcher v. Bd. of Ed. of Sch. Dis. Fractional No*. 5,323; 35 N.W.2d 177 (Mich. 1948). Apparent authority exists "where the acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Alar v. Mercy Memorial Hosp*., 529 N.W.2d 318 (Mich App. at 528, 1995). An attorney has apparent authority to settle a lawsuit on behalf of his client. *Nelson v. Consumers Power Co*., 198 Mich. App 82, 89-90; 497 NW2d 205 (1993). If an agent has apparent authority to do an act, the principal is bound by it even if it was not actually authorized. *Central Wholesale Co. v. Sefa*, 351 Mich. 17, 26; 87 N.W.2d 94 (1957.)

In *Nelson*, the plaintiff's attorney negotiated a settlement of pending litigation on behalf of his client. The defendant's attorney accepted that offer. Plaintiff later argued that her attorney did not have the authority to enter into that settlement agreement and sought to invalidate it. The Court of Appeals rejected this argument stating that such a ruling would result in an "unworkable situation" that would lead to lack of confidence in the conclusion of settlement discussions. (*Id.*) Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client is entitled to enforcement of the agreement, ***even***

*if the attorney is acting contrary to the client's express instructions*. (*Nelson supra* at 90, emphasis added.) Because defense counsel was "entitled to rely on [plaintiff's counsel]'s apparent authority, the Court of Appeals upheld the trial court's ruling that an enforceable settlement agreement was reached.

The same result was reached in *Glenn v. Yarbrough*, 2015 Mich. App. LEXIS 1445. In *Glenn*, defense counsel agreed to settlement terms proposed by plaintiff's counsel. There, as here, when defense counsel prepared the requisite documentation to accomplish the settlement, the plaintiff refused to sign. (*Id*. at *3.) The trial court determined that the agreement was enforceable because it had been agreed to, in writing, by plaintiff's counsel. (*Id*.) Plaintiff argued on appeal that he did not consent to the settlement, nor did he sign the agreement. (*Id.* at *8.) The Court of Appeals, citing *Nelson*, supra at 89-90, disagreed, holding that Plaintiff's attorney had apparent authority to enter into the agreement.

This sentiment was also articulately expressed in *Captial Dredge & Dock Corp. v. Detroit*, 800 F2d 525, 531-532 (6th Cir. 1986) which held, "[B]ut for this rule of law, prudent litigants could not rely on opposing counsel's representation of authorization to settle. Fear of a later claim that counsel lacked authority to settle would require litigants to go behind counsel to the opposing party in order to verify authorization for every settlement offer."

Here, as in *Nelson, Glenn*, and *Capital Dredge* Plaintiff's attorney had, at all times, apparent authority to enter into a binding settlement agreement, and did in fact do so. That he had apparent authority is exemplified by the following facts: he has represented Plaintiff since the inception of this litigation; he has communicated with opposing counsel as her representative; he represented her at her deposition; he deposed a number of witnesses in further discovery of this case; he signed responses to discovery requests on her behalf; he has appeared before this Court; he represented her through settlement negotiations; he reviewed and confirmed the terms of the settlement agreement and agreed to same in writing. Bob's, therefore, reasonably relied on Mr. Burg's apparent authority, as it was entitled to do under well-settled precedent, and communicated to this Court that confidential settlement had been reached. Plaintiff, is therefore, bound to the settlement agreement to which her attorney agreed.

## C.    Public Policy Strongly Supports The Enforcement of The Parties' Settlement Agreement

It is well-settled that "...the public policy of Michigan also favors settlements." *Hashem v. Les Stanford Oldsmobile, Inc.*, 266 Mich. App. 61, 85, 697 NW2d 558, 572 (2005). Federal court decisions have also uniformly adopted this position. *Henley v. Cuyahoga County Bd. of Mental Retardation & Developmental Disabilities*, 141 Fed. Appx. 437, 442 (6th Cir. 2007) ("The district court's power to summarily enforce settlements extends to cases where the parties'

14

agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court"). *Aro Corp. v. Allied Witan Co*., 531 F.2d 1368, 1372 (6th Cir. 1976)(public policy strongly favors settlement of disputes without litigation, including in Title VII cases); *Williams v. L.C.P. Chem. Inc*., 802 F.2d 461 (Table), 1986 U.S. App. LEXIS 28880, *5, 1986 WL 17528 at *2 (6th Cir. 1986)(settlement is similarly encouraged in Title VII cases). Where as here, an agreement was reached after negotiations between counsel for the parties, it would be manifestly unjust to fail to enforce it.

Indeed, a contrary result would create an "unworkable" situation wherein opposing counsel could not rely upon representation of a party's counsel that settlement had been reached, requiring independent verification of settlement by "going behind counsel to the opposing party in order to verify authorization for every settlement offer." *Captial Dredge, supra* at 531-32. This is particularly true here where Plaintiff's counsel has represented Plaintiff for the entire 15 months this litigation has been pending, has appeared before the Court as her representative, represented her throughout discovery, throughout settlement negotiations, and subsequently admittedly "made a deal" when he accepted the terms of the written settlement agreement on her behalf. (Ex. 11, 03/11/2022 Voicemail.)

**D.** **Plaintiff Cannot Establish Fraud, Mutual Mistake Or Duress, And Thus Is Bound By The Final And Binding Settlement Agreement**

As a general rule, settlements are favored by the law, and therefore will not be set aside, except for fraud, mutual mistake, or duress. *Streeter v. Mich. Consol. Gas Co.*, 340 Mich. 510, 517, 65 N.W.2d 760 (1954); *Groulx v. Carlson*, 176 Mich. App. 484, 440 N.W.2d 644, 489 (1989) (litigants are not free to disregard a settlement agreement knowingly entered into unless they can conclusively establish mistake, fraud, or unconscionable advantage).

Plaintiff has not raised any such issue, nor could she. She, through her counsel, negotiated terms resulting in an accepted offer and a binding agreement confirmed by her counsel. Now, through her counsel, Plaintiff has represented only that she has changed her mind. It is well-settled in Michigan, however, that a party cannot void a settlement agreement "merely because [she] has had a 'change of heart." *Clark v. Al-Amin*, 309 Mich. App. 387, 396; 872 N.W.2d 730 (2015). Accordingly, the Court should enforce the binding settlement agreement entered into between the parties.

## IV.   CONCLUSION

WHEREFORE, Defendant Bob's Discount Furniture respectfully requests that the Court grant its Motion to Enforce Settlement Agreement in its entirety, dismiss Plaintiff's claims and award Defendant its costs and fees incurred filing this Motion.

Respectfully submitted,
JACKSON LEWIS P.C.

BY:   /s/ Linda L. Ryan
         Marlo J. Roebuck (P65640)
         Linda L. Ryan (P67686)
         Attorneys for Defendants
         2000 Town Center, Suite 1650
         Southfield, MI  48075
         (248) 936-1900
         marlo.roebuck@jacksonlewis.com
Dated:  April 28, 2022      linda.ryan@jacksonlewis.com

## CERTIFICATE OF SERVICE

On this day April 28, 2022, the undersigned did cause to be filed the foregoing document with the Court using the CM/ECF system, which will send notice of its filing to all counsel of record.

*/s/ Linda L. Ryan*
Linda L. Ryan (P67686)

4895-4989-8012, v. 2

17